**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000012
02-JUN-2022
07:58 AM
Dkt. 51 SO**

NO. CAAP-21-0000012

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOANN I. BENSON, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DCC-19-0012806)

## SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Joann I. **Benson** appeals from:
(1) the "Notice of Entry of Judgment and/or Order" (**Restitution Order**) entered by the District Court of the First Circuit, Honolulu Division on November 12, 2020; and (2) the "**Amended Judgment** and Notice of Entry of Amended Judgment" entered by the district court on September 29, 2021.[1] For the reasons explained below, we affirm the Restitution Order and the Amended Judgment.

On April 30, 2019, Benson's dog (**Oden**) bit Afatia **Ali'ilua** on his right forearm. Benson was cited by Honolulu Police Department Officer Eric **Hokama** for negligent failure to control a dangerous dog, in violation of Revised Ordinances of Honolulu (**ROH**) § 7-7.2 (1990 & Supp. No. 12, 2-08) (**NFCDD**). She

---

[1] The Honorable William M. Domingo presided.

pleaded not guilty to the charge.  She was tried by the district court on March 4, 2020.

At trial, Ali'ilua testified that on April 30, 2019, at around 10:45 a.m., he was in the Market City parking lot.  He walked "between cars going to get me something for eat."  As he was walking, a dog's "whole head came out" of a car's window and "went snatch my right arm, forearm."  He "poked the dog's eye" with his left hand and the dog released his arm.  At the time of the incident, "[o]nly the dog was in the back seat" of a white, four-door Toyota with the window down halfway.  He never saw the dog before he passed the car.

Officer Hokama testified that on September 14, 2019, he "conducted a traffic stop for a vehicle [Benson] had owned, a Toyota Corolla, for expired tax and safety."  He stated, "when I ran the plate in our case report system, it came out there was a pending dog bite case involving that vehicle[.]"  As he approached the vehicle, Benson was seated in the driver's seat and a "pit bull kind of looking dog" "was in the back seat and the window was cracked a little bit."  The dog was not on a leash.  Officer Hokama testified that when he informed Benson of the pending dog bite case, "she just said she will take care of it at court and then so I just gave her the citation."

Benson testified in her own defense.  She drove her car to Market City on April 30, 2019.  She brought Oden with her, but left him in the car when she went to Foodland and Walgreens.  She left Oden in the back seat and rolled the window down about four inches for ventilation.  She stated she had left Oden in the car by himself before and he never attacked anyone.  She never had any issue because Oden's "face is pretty big.  I didn't think he'd . . . be able to come out of there at all, . . . let alone approach anybody or bite anyone."  On cross-examination, Benson testified that she did not put a leash on Oden and he was not in a kennel while in her car.

After closing arguments, the district court issued its oral ruling:

Okay. So we had Mr. Aliʻilua who testified that on April 30th about 10:45 A.M. he's a Robert's Hawaii school bus driver; that he drop[p]ed off his school charter at the Foodland area in Market City which is in the City and County of Honolulu, state of Hawaii. He was in the parking lot.

He decided to go get something to eat in the area, and as he was walking through the parking lot between cars, all of a sudden he said the dog snatched his right forearm which means the dog bit his forearm. He testified it was right forearm and did show in court that there was a purplish scar which was that, it was bleeding a lot.

And he testified that there was a dog that had jumped out of that car with his whole head and bit his arm at which point he used his left hand to poke the dog in the eye and at which point the dog released and moved back into the car. He grabbed his hand to try to stop the bleeding. There was a couple there that noticed what was going on and they, um, they took a picture of the car as far as the license, uh, and called the police and also an ambulance.

Mr. Aliʻilua also testified that he did not see or notice that there was a dog in the car, did not provoke the dog, did not stick his hand through the window opening for the dog to -- to bite him, and there was no provocation on his part. He testified also that the window was halfway down which this court finds it was greater than four inches because the dog was able to completely put his head out. But it is a pit bull. Even Ms. Benson testified that it has a big head.

And, uh, also testified that when the police came -- well, actually the owner came, which he identified as Ms. Benson, he told her that the dog had just bitten his arm and that the police were on their way. She stated that she was sorry. And he said that, "Wait," you know. "Stay because the police are coming," and she stated that she had to leave and left him a message or a piece of paper with her name on it. I'm not sure whether or not there was any phone number on there or anything else to contact her. Um, he was treated apparently by the EMS and he did show his wound in court.

The second witness which was called was Corporal Hokama who had testified on September 14, 2019, some five months -- sorry, five months after the incident he stopped a white sedan because of, um, expired safety -- uh, safety tags. And as he was running the check on the car registration, there was a notification that there was a pending dog bite case.

And he spoke with Ms. Benson, who he recognized and identified in court, regarding that and she stated that she'll take care of it in court and so he gave her a citation. He noticed that there was a dog in the back seat. He noticed it was a pit bull and noticed the window in the back was cracked a little bit.

[Benson] did take the stand, testified that she was present on that particular day, had gone to Market City with her dog Oden. He was two and a half years old. Um, and she went to Market City to get some food. Normally she tries to park in areas where there are people who won't be walking by

the car and there was some shade there too. But she testified that on that day there was -- the parking lot was full so she took the only available space with any possible shade, left Oden in the back seat. He was not in a kennel. Did not have a leash on at that point.

And she testified that she did crack the window approximately four inches down so that he could get some ventilation. She also testified that the -- Oden's face is big. She also testified that he has not acted aggressively although neighbors' friends tried to provoke him when they call on the dog and hit the screen which causes him to bark.

The court finds that based on the testimony and specifically of Mr. [Aliʻilua] that he was just walking by, didn't expect anything to happen at this point, did not see a dog, did not provoke a dog, and he was bitten by the dog, the whole head had just come out.

The court finds also that based on testimony and the disputed facts that the window was not cracked down four inches as Ms. Benson stated as the window was at least halfway down as Mr. [Aliʻilua] stated for -- in order to enable th[e] dog to come out.

So based on the fact of the window not being -- she did take some measures but they were negligent -- negligently failed to prevent anything that would relay provocation -- non-provocation on that. So therefore the court finds that the State has proved beyond a reasonable doubt that Ms. Benson is guilty of the charge of dangerous dog.

The Restitution Order and the Amended Judgment were entered. This appeal followed.

Benson raises one point of error on appeal: "Benson's conviction requires reversal where there was no substantial evidence that Benson negligently failed to control a dangerous dog or negligently failed to take reasonable measures to prevent her dog from attacking Aliʻilua."

The Hawaiʻi Supreme Court has stated:

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007) (cleaned up) (reformatted).

ROH § 7-7.2 (1990 & Supp. No. 12, 2-08) provides, in relevant part:

> **Prohibited acts — Conditions on owner – Penalties.**
>
> (a) A dog owner commits the offense of negligent failure to control a dangerous dog,[2] if the owner negligently fails to take reasonable measures to prevent the dog from attacking, without provocation, a person . . . and such attack results in: . . . (2) bodily injury to a person other than the owner.

Based on the charge in State v. Argus, No. CAAP-17-0000340, 2019 WL 3384851 (Haw. App. July 26, 2019) (SDO), we held that

> the offense of NFCDD requires proof that the accused:
> (1) owned, harbored, kept, or had custody of a dog;
> (2) negligently failed to take reasonable measures to prevent the dog from attacking without provocation; and
> (3) which resulted in bodily injury to a person other than the owner. ROH § 7-7.2.

Id. at *1. Given the circumstances in this case, it appears the same elements apply here as well.

Benson does not contest that she owned Oden, that Aliʻilua did not provoke Oden, or that Aliʻilua sustained bodily injury. She contends she did not "negligently fail[] to take reasonable measures to prevent her dog from attacking Aliʻilua" because "there was no evidence presented that would suggest Benson should have been aware of a substantial and unjustifiable risk that her dog would attack Aliʻilua, since her dog had never

---

[2] "Dangerous dog" is defined as "any dog which, without provocation, attacks a person or animal. A dog's breed shall not be considered in determining whether or not it is dangerous." ROH § 7-7.1 (1990 & Supp. No. 12, 2-08).

attacked, bitten, or been aggressive to any persons before without provocation."  She cites Hawaii Revised Statutes (**HRS**) § 702-206 ("Definitions of states of mind").[3]

HRS § 702-206 (2014) provides, in relevant part:

> (4)  "Negligently."
>
> (a)  A person acts negligently with respect to his conduct when he should be aware of a substantial and unjustifiable risk taken that the person's conduct is of the specified nature.
>
> (b)  A person acts negligently with respect to attendant circumstances when he should be aware of a substantial and unjustifiable risk that such circumstances exist.
>
> (c)  A person acts negligently with respect to a result of his conduct when he should be aware of a substantial and unjustifiable risk that his conduct will cause such a result.
>
> (d)  A risk is substantial and unjustifiable within the meaning of this subsection if the person's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a law-abiding person would observe in the same situation.

Contrary to Benson's contention, "negligently" under HRS § 702-206 "does not involve a state of awareness on the part of the defendant."  HRS § 702-206 cmt. (2014).  "Rather, negligence involves the inadvertent creation by the defendant of a risk of which the defendant would have been aware had the defendant not deviated grossly from the standard of care that a law-abiding person would have observed in the same situation." Id.

ROH § 7-7.2(b) defines "reasonable measures to prevent the dog from attacking" as including, among other things, measures required to be taken under Article 4 of ROH Chapter 7 "to prevent the dog from becoming a stray[.]"  A "stray" is, among other things, any dog in a "public place, except when under the control of the owner by leash, cord, chain or other similar

_____

[3]     ROH § 7-7.1 provides, in relevant part:

"Negligently" shall have the same meaning as is ascribed to the term in HRS Section 702-206.

means of physical restraint[.]"  ROH § 7-4.1 (1990 & Supp. No. 19, 7-2011).

In Argus we held that the defendant negligently failed to take reasonable measures to prevent his dog from attacking the complaining witness because the complaining witness's testimony established that "the dog that bit her while she was walking on a public sidewalk, was unleashed."  2019 WL 3384851, at *3.  We stated that the defendant's "failure to keep his dogs on a leash constitutes negligence on his part" under ROH § 7-7.2.  Id. at *3 n.5.

Further, in State v. MacDonald, No. 28793, 2009 WL 245436 (Haw. App. Jan. 30, 2009) (mem.), this court recognized that ROH § 7-7.2 does not require evidence of a dog's previous bite.  There, we stated:

> On its face, ROH § 7-7.2 does not state that the ordinance applies only to owners of dogs that have previously bitten a person.  By its plain and unambiguous language, the ordinance applies whenever a dog owner "negligently fails to take reasonable measures to prevent the dog from attacking, without provocation, a person . . . and such attack results in . . . bodily injury to a person other than the owner."  The only instance where a "prior" attack by a dog would be relevant is at sentencing[.]

Id. at *5.

In this case, the district court found that Benson left her dog in her car in a public place, unleashed, with the window "at least halfway down[.]"  This finding was supported by substantial evidence, and was not clearly erroneous.  The district court did not err in concluding that Benson negligently failed to take reasonable measures to prevent Oden from biting Aliʻilua.

Based on the foregoing, the Restitution Order entered by the district court on November 12, 2020, and the Amended Judgment entered by the district court on September 29, 2021, are affirmed.

DATED:  Honolulu, Hawaiʻi, June 2, 2022.

On the briefs:

Ashlyn L. Whitbeck,
Deputy Public Defender,
State of Hawaiʻi,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge